# CHARLESTON

### McCUTCHEON *v.* INGRAHAM.

*(GREEN, JUDGE, absent.)

Submitted January 22, 1889.—Decided March 12, 1889.

1. RESCISSION OF CONTRACT—VENDOR'S LIEN.

On the 12th day of April, 1882, M. executed to I. a deed of conveyance for certain lots of land in Greenville Wirt county, W.

*On account of illness.

Va., in consideration of $600.00, $200.00 of which was paid in cash, and the residue to be paid in one, two, three and four years after date, in payments of $100.00 each, and the vendor's lien was retained to secure the payment of said deferred instalments. In 1884, I. insured the house situated on said lots in the North British & Mercantile Insurance Company for $500.00 ; and the said house was destroyed by fire February 5, 1886. Subsequently an agreement in writing dated in January, 1885, was entered into between M. and I., whereby it was stipulated, that I. should remain in possession of said lots until the 1st day of March, 1886, on the following conditions, viz : That she, the said I., should take care of said property keep the taxes paid up to that date and peaceably surrender possession of said property to the said M., give up the deed, which she then held, and the said M. should give up the notes she might then hold against said I., and the whole former trade or sale of the property should be rescinded ; but if the said I. should meet all the payments due to that date with a probability of meeting the remaining deferred payments, then the original contract to remain in full force ; otherwise to be null and void. Upon a bill filed in June, 1886, to enforce said vendor's lien against I., she filed said agreement of January, 1885, with her answer and relied upon the same as a release of said vendor's lien and a recission of the contract to pay the residue of said purchase-money. HELD :

I. By said agreement of January, 1885, said vendor's lien was released, and the contract to pay the residue of said purchase-money was rescinded.

RESCISSION OF CONTRACT—INSURANCE.

II. Notwithstanding said agreement to rescind said contract of sale, until said rescission was consummated by exchange of deed and notes, the defendant, I., still retained an insurable interest in said property on the 5th of February, 1886, when said property was destroyed by fire, and was entitled to the benefit of said policy of insurance.

*Beard & Lockhart* for appellant.

*V. B. Archer* for appellee.

ENGLISH, JUDGE :

On the 25th day of April, 1882, Elizabeth D. MacCutcheon conveyed to Rachel C. Ingraham four town-lots in the town of Greenville in the county of Wirt and state of West Virginia in consideration of $600.00, $200.00 of which was paid down in cash, and the remaining $400.00 was to be paid in four instalments, the first to be paid on the 1st

day of May, 1884, and the residue in one, two and three years thereafter with interest from date, and to secure the payment of said deferred instalments the vendor's lien was reserved. On the 1st day of August, 1884, said R. C. Ingraham paid the sum of $40.00 on said first note and has paid nothing since. In June, 1884, said R. C. Ingraham insured said house for $500.00 in the North British & Mercantile Insurance Company. On the 31st day of January, 1885, an agreement in writing was entered into between said E. D. MacCutcheon and Rachel Ingraham, wherein it was covenanted, that the said Rachel Ingraham should remain in peaceable possession of the property aforesaid until the 1st day of March, 1886, on the following conditions, viz : That said R. Ingraham should take good care of said property keep the taxes paid up to that date and peaceably surrender possession of the same to said E. D. MacCutcheon and give up the deed, which she then held, said E. D. MacCutcheon to give up the notes she may then hold against the said R. Ingraham, and the whole former trade or sale of the property should be rescinded ; but if the said Rachel Ingraham should meet all the payments due to that date with a probability of meeting the remaining deferred payments, then the original contract was to remain in full force ; otherwise to be null and void.

In the month of February, 1886, the house situated on said lots was destroyed by fire together with some personal property belonging to the defendant, Rachel Ingraham. On the first Monday in July, 1886, the said Elizabeth D. MacCutcheon filed a bill in equity in the Circuit Court of Wirt county to enforce the vendor's lien reserved on the face of said deed, and to recover the residue of the purchase-money, which was then due from said Rachel Ingraham to plaintiff on said lots or parcels of land upon the notes in said deed described, and made Rachel Ingraham, The North British & Mercantile Insurance Company and J. R. Timms, agent, and in his own right defendants ; and by way of auxiliary process she sued out an attachment in said suit and designated the defendant, J. R. Timms, agent of said insurance company, as being indebted to or having in his possession or under his control the effects of said Rachel Ingraham, who

was summoned to answer at the next term of said Circuit Court; and on the 30th day of June, 1886, said Timms, as agent of said insurance company, filed his answer in writing in open court, as garnishee, disclosing, that he had in his possession a draft for $500.00, payable to Miss R. C. Ingraham, to pay the loss on said property. On the 26th day of October, 1886, the defendant R. C. Ingraham demurred generally to the plaintiff's bill, which demurrer was subsequently overruled.

On the 29th day of March, 1887, the defendant Rachel Ingraham filed her answer to the plaintiff's bill, and the plaintiff replied generally thereto. In said answer said defendant admitted the purchase of the lots in the bill mentioned at the price therein stated. She filed the deed from plaintiff as an exhibit with her answer and admitted, that the notes executed by her to the plaintiff were correctly stated in plaintiff's bill. She however denied, that she owed the plaintiff on the 10th of June, 1886, $331.00 on account of the three notes then due, and claimed a set-off of $13.00 on account of taxes she was compelled to pay for plaintiff. She admitted, that she had the dwelling-house insured in the year 1884 for the sum of $500.00 and claimed, that being the owner she had a right so to do; and alleged, that said dwelling-house having been destroyed by fire on the 5th day of February, 1886, by such destruction the money mentioned in the policy became due and payable to her. She denied that said lots were worth only $75.00 and claimed that they were worth $250.00 or $300.00. She further alleged, that in order to collect said insurance-money she was compelled to sue said insurance-company in the county of Wood, and that the jury gave her a verdict for $500.00 but at great cost and expense to her; that said sum was paid into the hands of one R. Huber Smith, the receiver of said Circuit Court of Wood county, where the same still remains; and that said sum of money had never at any time been under the control or in the possession of said defendant. She denied, that plaintiff was entitled in equity to any portion of said insurance-money, because she is indebted to plaintiff for the purchase-money, or because she has occupied said property. She denied, that she agreed to have said prop-

erty insured, and to assign the policy to plaintiff, if plaintiff would not sue her. She then recited the agreement in writing hereinbefore stated as having been entered into between her and plaintiff on the 31st day of January, 1885, and claimed, that she fully complied with said agreement, and for that reason the sale of said property to her is wholly and fully rescinded and annulled under the terms of said agreement. She claimed, that since the 1st of March, 1886, the plaintiff had taken possession of said property and rented it to others. She tendered a deed re-conveying said property and demanded, that said notes be surrendered to her. She also alleged, that she proposed to surrender said property to plaintiff soon after said dwelling was burned, if plaintiff would surrender to her said notes; but plaintiff refused and brought this suit to enfore her supposed lien, which had been rescinded and annulled by said agreement *etc.*

A considerable number of depositions was taken on both sides and filed in the cause, bearing principally upon the questions raised by the attachment-proceedings and the value of the lots, after the house was burned, and the rental value of the property while occupied by said defendant, and its present rental value; and on the 29th day of June, 1887, the cause came on to be heard upon the papers formerly read and proceedings theretofore had, and the proofs filed; and the court decided to enforce the vendor's lien on the property described in the bill and decree, that the plaintiff recover from the defendant, Rachel C. Ingraham, the sum of $480.36 with interest to the 29th day of June, 1887, and directed a sale of said lots by a special commissioner therein appointed, unless said amount and costs were paid in thirty days from the date of said decree, after the giving of bond and the advertising of the property as therein directed. The said Rachel C. Ingraham however in her answer claimed, that by the terms of the agreement made and entered into between herself and the plaintiff, E. D. MacCutcheon, on the 31st day of January, 1885, she, respondent, was to remain in possession of said property until the 1st day of March, 1886, to take good care of said property and keep the taxes paid up to that date, and on that day she was to surrender possession of said property to plaintiff and also surrender the deed, and

plaintiff was to give up the notes she then held, and the whole former trade was to be rescinded; and the only clause in said agreement, which would confer upon her the right to insist upon said original contract was the one, which provided, that if the defendant should meet all the payments due to that date, meaning the 1st day of March, 1886, with a probability of meeting the remaining deferred payments, the original contract should remain in full force; otherwise it was to be null and void. She further alleges, that she complied with said contract so far as paying taxes and caring for the property was concerned, but that being unable to pay any part of said deferred payments of purchase-money then due she failed to make said payments, nor was there any probability of her meeting said deferred payments; and she charges, that the said contract and the sale of said property is wholly rescinded and annulled under and by the terms of said agreement.

Upon examination of said agreement it seems to us, that the defendant, Rachel C. Ingraham, is correct in the construction which she places thereon. She was to be allowed to retain peaceable possession of said property until the 1st day of March, 1886, upon condition, that she should take good care of the same and pay the taxes up to that date, and then she was to peaceably surrender possession of said property to the plaintiff and give up the deed she held, and the plaintiff was to give up the notes, which she then held against the said Rachel, and the whole former trade or sale of the property should be rescinded. The residue of said contract merely conferred upon said Rachel the right to keep said property, if she met the payments promptly, and there was a probability of her meeting the payments, that would fall due after the 1st of March, 1886. The defendant appears to have paid the taxes at considerable inconvenience to herself and to have used ordinary diligence in caring for the property, and nothing in the testimony taken in the cause shows, that she was to blame for the destruction of the house, which occurred, when she was absent from home on a visit, she having left it in the care of a party, who had made his home with her, and who swears she took good care of it. Said defendant tenders the deed with her answer and also a deed

reconveying the property to plaintiff and demands a surrender of the notes held by plaintiff.

Giving, then, the agreement aforesaid of January 31, 1885, the construction, we have indicated, it would operate as a complete answer to the plaintiff's bill, so far as that bill seeks to enforce the vendor's lien, and would entitle the defendant Rachel C. Ingraham to a surrender of her notes upon the return of the deed and re-conveyance of the title, which she offered to make in the answer filed by her in this cause. The plaintiff in her bill however alleged, that the draft for the sum of $500.00 in the possession of said Timms, as agent for said insurance company, was for the express purpose of paying the loss on the identical house sold by plaintiff to defendant, Ingraham, which was destroyed by fire in February, 1886; that it is just, equitable and right, that she should have the full benefit of said insurance-policy,—the defendant having never paid more than about one third of the purchase-money on said house and lots, and having used and enjoyed the same for about four years without paying any part of the deferred purchase-money, save and except the sum of $40.00, with which, she is duly credited. She further says, that her vendor's lien is a lien on said policy of insurance, and that said draft in the hands of said Timms, agent as aforesaid, is subject to the lien for the deferred purchase-money, and that it was agreed between the defendant and herself, that, if the plaintiff would hold up and not sue her on said purchase-money for said property, she, defendant, would get said property insured in some good company and assign the benefit of the policy of insurance to plaintiff to indemnify her against loss and damage in case of fire; that said Ingraham did insure said house in said insurance-company but failed and refused to assign the benefit thereof to plaintiff and now refuses to pay plaintiff any part of said policy; and she prays judgment against said J. R. Timms, agent and garnishee. Said Rachel Ingraham in her answer denies, that the lien retained in said deed is a lien on said policy of insurance or on the draft in the hands of said Timms; or that the same or the money realized thereon is subject to said lien; and calls for proof. She also denies, that she agreed with the plaintiff to have said house insured,

and then to assign to her the policy of insurance, if plaintiff would hold up and not sue her on said purchase-money.

Now, although the .plaintiff had her own deposition taken in the cause, she states nothing in regard to said alleged agreement between herself and said Ingraham, that she should insure the property and assign to her the policy, if plaintiff would not sue on said deferred note; and no other witness proves any such agreement. If such an agreement had been established, it would have constituted an equitable lien in favor of the plaintiff upon said policy of insurance; but no such agreement having been proven, and it being positively denied by the answer, it need not be considered further. The loss of said house, however, by fire, having occurred subsequent to said agreement of the 31st of January, 1885, in regard to the rescission of said contract of sale, and before the first day of March, 1886, when said agreement was to be consummated, a question presents itself as to whether this state of circumstances would entitle the plaintiff E. D. MacCutcheon to said insurance-money or any part thereof. In Wood on fire Insurance, p. 558, § 330, we find, that "a mere contract to sell property covered by insurance, even though the insured has bound himself to convey upon the performance of certain conditions, does not affect the validity of the policy; and if a loss occurs before the conditions are performed, a recovery may be had by the insured, even though the conditions are subsequently performed; and, if it was agreed, that the policy should be assigned to the purchaser, the judgment will inure to his benefit: Neither will a conditional transfer of property avoid the policy, but, if the insured parts with all his interest in the property, the policy ceases to be operative." See, also, 2 Bart. Ch.; Pr. p. 918, § 290; also Insurance Co. v. Morrison, 11 Leigh, 354.

In Fland. Ins. p. 458, § 11, we find that a conveyance, and simultaneous reconveyance back, or a transaction which amounts only to a conditional sale, is not such alienation as avoids a policy of insurance." * * * * "A contract of sale, the vendor retaining the title as his security for the unpaid purchase money, does not divest his insurable interest. The vendor, before payment of the purchase-money and delivery of the conveyance, is to all intents and purposes the

owner of the estate." In *Gilbert* v. *Insurance Co.*, 23 Wend. 43, the insured premises were conveyed in fee, and a mortgage taken back to secure a portion of the purchase-money. The residue of the purchase-money was left open to await the result of a controversy between the vendor and a third person respecting incumbrances on the property, the deed and mortgage although recorded to remain in the hands of a third party, until such controversy was settled. Meanwhile the premises were destroyed by fire, and it was held, that the deed did not take effect as an operative instrument until the happening of the contingency provided for, and that the fact of its having been recorded was only *prima facie* evidence of a delivery, and might consequently be rebutted, and therefore the grantor was devested of his insurable interest in the premises. See, also, Fland. Ins. p. 426, § 7. and *Trumbull* v. *Insurance Co.*, 12 Ohio, 305.

Considering, then, the facts and circumstances developed in this case in the light of these authorities I am of opinion, that the plaintiff, MacCutcheon, has no lien of any description upon said insurance-money, but that the said defendant, Rachel C. Ingraham, had an insurable interest in said real estate, both at the time said property was insured, and at the time said loss occurred, and that she was entitled to said insurance-money as between herself and the plaintiff. I am further of the opinion, that the Circuit Court erred in its decree of June 29, 1887, in decreeing in favor of the plaintiff on the single bills described in the deed from plaintiff to said Ingraham for the sum of $480.36 or any other sum and in decreeing a sale of said lots to satisfy the lien retained on the face of said deed. This being the case, it is unnecessary to express any opinion upon the regularity of the proceedings had upon the attachment sued out in the cause, as it was only auxiliary to the original suit, and all dependent proceedings must fail, if the original suit is not sustained.

The decree complained of must be reversed, and the bill dismissed, and the appellee must pay the costs of this appeal and of the court below.

Reversed.    Dismissed.