## Industrial Accident Board V. Cefus Guidry

No. A-7941. Decided April 12, 1961
Rehearing overruled May 10, 1961
(345 S. W. 2d Series 509)

*Will Wilson*, Attorney General, *John L. Estes, Tom I. Mc-Farling* and *Byron Fullerton*, Assistants Attorney General, for petitioner, Industrial Accident Board.

*Marcus, Weller & Evans*, of Beaumont, for respondent.

MR. JUSTICE SMITH delivered the opinion of the Court.

This appeal involves two basic questions, and these questions are presented in two applications. The application of the Industrial Accident Board for writ of error presents several points complaining of the judgment of the Court of Civil Appeals. The writ was granted on the points questioning the jurisdiction of the trial court, although all the questions are here for review. Guidry's application was granted to review the alleged error of the Court of Civil Appeals in holding that the petitioners were entitled to have submitted to the jury the requested issue as to whether or not Cefus Guidry suffered partial incapacity as a result of his injury, if any. However, the disposition we make of the State's application for writ of error renders it unnecessary for us to decide the question presented by Guidry.

The petitioners shall hereinafter be designated as the Board, the State, or the Second-Injury Fund. The respondent, Cefus Guidry, shall be referred to either as respondent or Guidry.

This suit was filed by Guidry against the Second-Injury Fund, the State of Texas, and the Industrial Accident Board, to recover benefits from the Fund, as provided by Sections 12c,[1] 12c-1,[2] and 12c-2[3] of Article 8306, Vernon's Annotated Civil

---

1.     Sec. 12c. If an employee who has suffered a previous injury shall suffer a subsequent injury which results in a condition of incapacity to which both injuries or their effects have contributed, the association (Texas Employers' Insurance Association) shall be liable because of such injury only for the compensation to which the subsequent injury would have entitled the injured employee had there been no previous injury; provided that there shall be created a fund known as the 'Second-Injury Fund' hereinafter described, from which an employee who has suffered a subsequent injury shall be compensated for the combined incapacities resulting from both injuries." Acts 1917, p. 269; Acts 1947, 50th Leg., p. 690, ch. 349, § 1.

2.     "Sec. 12c-1. If an employee who has previously lost, or lost the use of, one arm, one foot, one leg, or one eye, becomes permanently and totally incapacitated through the loss or loss of use of another member or organ, the association shall be liable only for the compensation payable for such second injury provided, however, that in addition to such compensation and after the combination of the payments therefor, the employee shall be paid the remainder of the compensation that would be due for the total permanent incapacity out of the special fund known as 'Second-Injury Fund,' hereafter defined." Acts 1947, 50th Leg., p. 690, ch. 349, § 1.

3.     "Sec. 12c-2. The special fund known as the 'Second-Injury Fund' shall be created in the following manner:

    "(a) In every case of the death of an employee under this Act where there is no person entitled to compensation surviving said employee, the association shall pay to the Industrial Accident Board the sum of Three Thousand Dollars ($3,000) to be deposited with the Treasurer of the State for the benefit of said Fund and the Board shall direct the distribution thereof.

    "(b) When the total amount of all such payments into the Fund, together

Statutes of Texas. Guidry claims that the material facts show that in childhood he sustained a non-compensable injury to his left eye resulting in total loss of vision in that eye, and that on January 31, 1957, while in the course of his employment with Bechtel Corporation, a subscriber to the Workmen's Compensation Act, he sustained an injury to his right eye, resulting in total loss of vision in that eye, and that the combined effects of the two injuries had rendered him totally and permanently disabled. Guidry claimed that in view of these facts he was entitled to a recovery of compensation for 301 weeks from the Second-Injury Fund.

The State, the Second-Injury Fund, and the Board filed a plea in abatement and a plea to the jurisdiction of the trial court asserting: (1) that no prior consent had been given by the legislature to sue the State of Texas, and (2) that lack of jurisdiction was clearly shown in that Guidry failed to give notice of his injury of January 31, 1957, to the Second-Injury Fund within thirty days thereafter, and that he failed to make claim against the Second-Injury Fund within six months thereafter. These pleas were heard in limine and were overruled by the court.

Thereupon, the court proceeded to trial, and submitted three special issues to a jury. The jury found: (1) that the injury sustained by Guidry on January 31, 1957, resulted in incapacity to work; (2) that it resulted in total incapacity to work and earn money; (3) that such total incapacity will be permanent. The trial court accepted the verdict and entered judgment thereon that Guidry recover of and from the Second Injury Fund compensation at the rate of $25.00 per week for the period of 301 consecutive weeks from and after January 4, 1959. On appeal the Court of Civil Appeals reversed and remanded the case to the trial court for a new trial. 336 S.W. 2d 785. We reverse the judgment of the Court of Civil Appeals for the reasons now to be stated.

The State concedes that its plea in abatement asserting that

with the accumulated interest thereon, equals or exceeds One Hundred Thousand Dollars ($100,000) in excess of existing liabilities, no further payments shall be required to be paid to said Fund; but whenever thereafter the amount of such Fund shall be reduced below Fifty Thousand Dollars ($50,000) by reason of payments to such Fund, then payments to such Fund shall be resumed forthwith, and shall continue until such Fund again amounts to One Hundred Thousand Dollars ($100,000) including accumulated interest thereon." As amended Acts 1957, 55th Leg., p. 1186, ch. 397, § 1.

Guidry had not pleaded or proved the consent of the legislature to sue the State of Texas is without merit.

The State does, however, contend that since the Second Injury Fund Sections of Article 8306, supra, are an integral part of the Workmen's Compensation Act, and since the Second Injury Sections of said Article do not in and of themselves provide for notice to and claim against the Second Injury Fund, Guidry must c o m p l y with the necessary jurisdiction prerequisites as provided in Section 4a[4] of Article 8307, Vernon's Annotated Civil Statutes.

■ The State admits that Guidry's employer had immediate notice of the injury sustained on January 31, 1957, and that Guidry's claim against the insurer was filed on March 27, 1957, well within six months from the date of the injury. The contention is made, however, that under Section 4a, Article 8307, supra, a claimant who seeks to recover benefits from the Second Injury Fund on account of the combined effects of a prior noncompensable injury and a subsequent compensable injury *must* put the Board on notice within thirty days after the *occurrence* of the second injury that he is claiming benefits from the Second Injury Fund and likewise *must* file formal claim for benefits against the Second Injury Fund within six months from the date of his compensable or second injury. We agree with this contention.

The problem of the compensation to be awarded to a handicapped or previously injured workman who has been subsequently incapacitated as the result of a second injury has been before the Texas courts. However, the question as to when notice to the Second Injury Fund must be given, and as to when the claim for compensation out of the Second Injury Fund must be filed with the Board is one of first impression in this jurisdiction. Admittedly, Guidry failed to give notice of injury to the Second Injury Fund within thirty days of the accident of January 31, 1957, and failed to make claim against the Second Injury Fund within six months of the accident. While it is true

---

4.    "Sec. 4a.  Unless the Association or subscriber have notice of the injury, no proceeding for compensation for injury under this law shall be maintained unless a notice of the injury shall have been given to the Association or subscriber within thirty (30) days after the happening, of an injury or the first distinct manifestation of an occupational disease, and unless a claim for compensation with respect to such injury shall have been made within six (6) months after the occurrence of the injury or of the first distinct manifestation of an occupational disease; . . . "

that Guidry's claim against the insurance carrier was filed with the Industrial Accident Board, as required by Section 4a, supra, and was by the Board heard and considered, the fact remains without dispute that at no time in the course of such proceedings does the record reflect that a claim was formally filed against the Second Injury Fund as required by said Section of the Workmen's Compensation Act. Guidry neither pleaded nor proved any good cause for his failure to comply with the provisions of this Section. He takes the position that his cause of action did not accrue until final adjudication of the claim against the insurance carrier for the injury sustained on January 31, 1957. He claims that his cause of action did not accrue until May 21, 1958, when the claim against the insurance carrier was finally adjudicated and an agreed judgment for $2500.00 was entered in the Federal District Court. We do not agree. Guidry's cause of action accrued on January 31, 1957, and in order to preserve his claim against the Second Injury Fund it was encumbent upon him to give notice to the Second Injury Fund within thirty days from that date and file his claim thereon within six months. This he did not do.

■ Since the Second Injury Fund Sections of Article 8306 are an integral part of the Workmen's Compensation Act, and since they do not in and of themselves provide for notice to and claim against the Second Injury Fund, we necessarily must read into the Second Injury Fund Sections the provisions of the Workmen's Compensation Act which provide the time for the giving of notice of claim and the time for filing of a claim against the insurance carrier. By placing the Second Injury Fund Sections, supra, into the Workmen's Compensation Act and by remaining silent as to the manner in which a claim against the Second Injury Fund is to be perfected and considered, the legislature undoubtedly intended that the established procedure of administrative disposition by the Board, and all pertinent provisions of the Act for that matter, be equally applicable to a claim against the Second Injury Fund as they are applicable to claims against insurance carriers. A proceeding by a claimant against the Second Injury Fund does not differ materially from a proceeding by a claimant against the insurance carrier. It follows, therefore, that all necessary jurisdictional prerequisites as provided in Section 4a, supra, must be complied with in suits to secure payment from the Second Injury Fund as are required in other Workmen's Compensation cases. If the legislature had intended to provide other and different periods of time within which to give notice and file claims

against the Second Injury Fund, it could have easily incorporated such provisions in the Second Injury Fund amendment to the Workmen's Compensation Act. The power rests with the legislature to prescribe the method of procedure under the Act. We decline to assume the responsibility of fixing a statutory period of limitations for the giving of notice and the filing of claims against the Second Injury Fund. As the Second Injury Fund is now written, we see no reason why it would be unreasonable to require that in cases such as Guidry's, the claimant should, if he expects to recover from the Second Injury Fund, comply with the jurisdictional prerequisites as provided in Section 4a, supra. On January 31, 1957, the date Guidry sustained the second injury, he knew that he had a potential claim against the Second Injury Fund as well as against the insurance carrier. Both claims should have been presented by joint proceedings against the Second Injury Fund as administered by the Board, and against the assets of the compensation carrier administered by the insurance company. If such procedure had been followed by Guidry, then both issues could have been adjudicated in one lawsuit. A finding by the trier of the facts that Guidry had sustained the total loss of his right eye, or the total loss of the use of his right eye as the result of the injury sustained on January 31, 1957, and, prior thereto he had sustained total loss of the left eye or the total loss of the use of his left eye, would have afforded the basis for the entry of a judgment against the insurance carrier for the loss as to the right eye, a specific injury, and against the Second Injury Fund for an amount which would make up the *difference* between the statutory compensation provided for the second injury and the amount which otherwise would be allowed for the incapacity resulting from the combined effect of both injuries. In this type of claim the Second Injury Fund is entitled to the same protection and privileges which the legislature has given the insurance carriers. To deny the Board the right to notice within thirty days after the accident that a claim against the Second Injury Fund was to be asserted, as well as the claim against the insurance carrier, would deprive the Board of the valuable right of making an immediate investigation of the facts upon which the employee based his claim for compensation from the Second Injury Fund.

The judgments of the trial court and that of the Court of Civil Appeals are both reversed and judgment is here rendered that the respondent take nothing by his suit.

ASSOCIATE JUSTICE STEAKLEY not sitting.